UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00030-GNS-HBB

GARY M. ARFORD                                                                PLAINTIFF

v.

CHRIS LINK, ET AL.                                                         DEFENDANTS

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (DN 82). The deadline for filing a response to that motion was September 15, 2016. Neither Defendant Chris Link nor Defendant Angela Stokes Link (collectively "Defendants") filed a response. Therefore, this matter is ripe for adjudication. For the reasons stated below, Plaintiff's motion is **DENIED**.

## I.  STATEMENT OF FACTS

Plaintiff Gary M. Arford ("Arford"), by virtue of a limited power of attorney, filed this action on behalf on nine investors. (Compl., DN 1). The parties' dispute arises out of an allegedly fraudulent oil-investment scheme perpetuated by Defendants, among others. (Pl.'s Mot. Summ. J. 3, DN 82 [hereinafter Pl.'s Mot.]). Defendants solicited funds from the investors to drill oil wells in Kentucky. (Pl.'s Mot. 3-4). In exchange, the investors received "units" in the "Union Light 10 Well Preferred" partnership. (Compl. ¶¶ 24-25). These units entitled each investor to a royalty interest in productive wells. (Compl. ¶ 25). Instead of drilling and operating oil wells, however, Defendants diverted the investment funds to other entities and eventually themselves. (Pl.'s Mot. 3-4).

1

The Court has entered a number of orders in this case.  On December 30, 2015, the Court entered default judgments against Defendants Brent Phelps, Scott Phelps, Regal Development Group, LLC, and Minotaur Consulting, LLC, leaving the Links as the sole Defendants.  (DN 58). On May 10, 2016, the Court pierced the corporate veil of Regal Development Group, LLC, which rendered its obligations enforceable against Defendants.  (Order 1, DN 77).  As a result, the Court entered judgment against Defendant Chris Link for $432,954.81.  (Order 2).  The Court also granted Arford's motion for partial summary judgment, thereby confirming that Defendant Chris Link's conduct amounted to conversion and defalcation.  (DN 79).  Moreover, due to their failure to provide Fed. R. Civ. P. 26(a)(1) disclosures, Magistrate Judge H. Brent Brennenstuhl entered discovery sanctions preventing Defendants from offering witnesses or exhibits in support of their defense.  (Agreed Order, DN 70; Order Granting Mot. for Sanctions, DN 73).

## II.     JURSDICTION

This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.[1]

## III.     DISCUSSION

Arford asks the Court to enter summary judgment against Defendants on his claims under 18 U.S.C. § 1964, the Racketeer Influenced and Corrupt Organizations Act ("RICO").  (Pl.'s Mot. 1).  A review of the Complaint and First Amended Complaint, however, reveals that Arford has not asserted a RICO claim.  The Complaint alleges fraud, violations under various sections of the Securities Exchange Act of 1934 and the Securities Act of 1933, violations of Kentucky's

---

[1] This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 because Arford has asserted violations of the Securities Act of 1933, and the Securities Exchange Act of 1934.

2

Blue Sky Law, breach of a common law fiduciary duty, breach of contract, conversion, civil conspiracy, and seeks an accounting and audit of the investment. (Compl. ¶¶ 40-143). The First Amended Complaint added a claim for piercing the corporate veil of Defendants Minotaur Consulting LLC and Regal Development Group LLC. (Am. Compl. ¶¶ 146-151). Since no RICO claim has been asserted, summary judgment cannot be granted for such claim.

Arford's motion would be denied even if the Complaint could be construed as asserting RICO claims. Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Because Arford's RICO "claims" would be barred by the Private Securities Litigation Reform Act ("PSLRA"), he is not entitled to judgment as a matter of law.

The civil RICO statute allows "[a]ny person injured in his business or property" by RICO violations to sue for damages. 18 U.S.C. § 1964(c). A RICO violation requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "Racketeering activity" is defined to include a number of offenses, such as wire fraud and mail fraud. 18 U.S.C. § 1961(1). A "pattern" consists of at least two violations of the included activities, predicate acts, within the last ten years. 18 U.S.C. § 1961(5).

The Complaint fails to mention any of the above elements; Arford discusses them for the first time in his motion. Specifically, Arford notes that Defendants committed the predicate acts of mail fraud and wire fraud in carrying out their scheme. (Pl.'s Mot. 17, 19-23). He explains that the moment he put the investors' checks in the mail at the Defendants' behest, "the

Defendants were guilty of mail fraud, as they had successfully effectuated their scheme to defraud the victims of their money though false representations concerning oil wells." (Pl.'s. Mot. 21). Likewise, he notes that the Defendants committed wire fraud through a series of fraudulent emails because, "without the fraudulent emails, there would have been no investment." (Pl.'s Mot. 22).

As Arford recognizes, Congress amended RICO through the PSLRA. (Pl.'s Mot. 9). The PSLRA precludes civil RICO claims that are based on alleged securities fraud. 18 U.S.C. § 1964(c). "The amendment not only eliminates securities fraud as a predicate act in civil RICO claims, but also prevents plaintiffs from relying on other predicate acts if they are based on conduct that would have been actionable as securities fraud." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 790 (6th Cir. 2012) (citing *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1991)). Moreover, "mail or wire fraud [may not serve] as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." H.R. Rep. 104-369, at 47 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 746. "Allowing such surgical presentation of the cause of action . . . would undermine the congressional intent behind the [PSLRA]." *Bald Eagle*, 189 F.3d at 330.

Arford relies on *Ouwinga* for the proposition that his RICO "claims" can proceed in spite of the PSLRA. In *Ouwinga*, the plaintiffs brought RICO claims against the purveyors of a financial product, the Benistar 419 Plan. *Ouwinga*, 694 F.3d at 789. The purveyors of the Plan represented that contributions were tax-deductible, that the plaintiffs could take money of the plan at any time tax-free, and that the whole transaction was above board. *Id*. at 788. Based on those representations, the plaintiffs agreed to participate. *Id.* Later, the IRS audited the plaintiffs' tax returns and penalized them for participation in the Plan. *Id.* at 789. The Plan

utilized variable life insurance policies, which qualify as securities; therefore, the plaintiffs' RICO claims were based on the purchase of securities. *Id.* at 790. The Sixth Circuit, however, held that the plaintiffs' RICO claims were not barred by the PSLRA because the securities transactions were "not integral to or 'in connection with' the fraudulent scheme as a whole." *Id.* at 791. There was no fraud in the underlying security—the plaintiffs did not allege fraud relating to the purchase of the securities; their fraud claim related only to the tax consequences of the Plan. *Id.* at 791.

Arford contends that this case falls within *Ouwinga* because "[w]hile the underlying assignment of securities formed a part of the Defendants' overall plan, the fraud in this case is separate and distinct, as it is derived from action unrelated to the assignment of the securities: the misrepresentations as to what actions the Defendants would take and what Arford could expect." (Pl.'s Mot. 11). The Court finds this argument unpersuasive. The contention that the predicate offenses discussed in Arford's motion are in not in connection with the purchase or sale of securities ignores the reality that the securities transactions were integral to Defendants' fraudulent scheme.

Briefly, the allegedly fraudulent scheme was the Union Light 10 Well Preferred partnership. It is undisputed that the each unit of the Union Light 10 Well Preferred partnership sold to the investors was a "fractional undivided interest in oil, gas, or other mineral rights" and thus constituted "securities." 15 U.S.C. § 77b(a).[2] Defendants allegedly misrepresented what actions they would take and what Arford could expect so the investors would give them money in exchange for those securities. As Arford aptly describes, without mail fraud and wire fraud, there would have been no investment. Taking this a step further, however, without the

---

[2] Arford explains this fact in the Complaint and in his motion. (Compl. ¶ 14; Pl.'s Mot. 10).

investment, there would have been no scam. *See Bald Eagle*, 189 F.3d at 330 (finding PSLRA bar precluded RICO claim based on Ponzi scheme that was accomplished by the purchase and sale of securities).  Despite Plaintiff's arguments, the oil and gas securities were integral to the alleged scheme.

Moreover, in line with the Sixth Circuit's language in *Ouwinga*, Section 10(b) of the Securities Exchange Act of 1934 is "directed at fraud 'in connection with purchase or sale' of securities." *Bald Eagle*, 189 F.3d at 329-30 (citation omitted).  Tellingly, while not setting out RICO claims, the Complaint explains why Defendants' actions violate Section 10(b), a myriad of other federal securities laws, and Kentucky's Blue Sky Law.  (Compl. ¶¶ 49-111).  Overall, "it is difficult to imagine [what Arford describes in his motion] as anything other than mail and wire fraud 'in connection with' the sale of securities." *Rickett v. Smith*, No. 1:14-CV-70-GNS-HBB, 2015 U.S. Dist. LEXIS 72959, at *13 (W.D. Ky. June 5, 2015).  Arford's RICO "claims" fall within the PSLRA's prohibition on securities fraud serving as a RICO predicate act, and therefore fail as a matter of law.

## IV.     CONCLUSION

For the reasons above, Plaintiff's Motion for Partial Summary Judgment (DN 82) is **DENIED**.  Even if the Complaint could be viewed as asserting RICO claims, those claims would be barred by the PSLRA.

**Greg N. Stivers, Judge**
**United States District Court**
December 14, 2016

cc:     counsel of record